IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN T. FLOYD, | ) | CASE NO. 1:18-CV-01340 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| STATE OF OHIO, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the *pro se* petition of Allen T. Floyd for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Floyd is currently incarcerated by the State of Ohio at the Ohio State Penitentiary in Youngstown, Ohio[3] where he is serving an aggregate sentence of sixteen years imprisonment imposed in 2016 by the Cuyahoga County Court of Common

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge John R. Adams in a non-document order entered on June 14, 2018.
[2] ECF No. 1.
[3] www.drc.ohio.gov/offendersearch

Pleas after Floyd was convicted at a bench trial of multiple counts arising out of several carjackings or attempted carjackings, as well as an aggravated robbery.[4]

Floyd in his petition raises five grounds for habeas relief.[5] The State in its return of the writ argues that the petition should be denied in part and dismissed in part.[6] For the following reasons, the petition be denied in part and dismissed in part.

### Facts and Proceedings in the Trial Court

The extensive facts as found the state appeals court[7] describe four separate incidents that occurred in Cleveland over a three-week period in September 2015, three of which involve a carjacking or attempted carjacking and one involves an aggravated robbery.

### *First Incident*

In the early evening of September 6, 2015, Judy Nogueras was waiting in the passenger seat of an SUV with the doors unlocked and the motor running while her boyfriend, Jose Hernandez, went inside a Giant Eagle store on the west side of Cleveland.[8] Suddenly, a male opened the passenger door and told Nogueras to get out of the vehicle

---

[4] ECF No. 11, Attachment 2 (state court record) at 23-24.
[5] ECF No.1.
[6] ECF No. 11.
[7] Facts found by the state appeals court are here presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).
[8] ECF No. 11 at 2 (quoting record).

but leave her purse behind.[9] When she told the man he could have the car but not her purse, the intruder lifted his shirt and put his hand on a gun in the waistband of his pants.[10]

As this was happening, another man opened the driver s side door of the SUV and got in.[11] Nogueras screamed for help, causing her boyfriend Hernandez to run up to the vehicle.[12] Hernandez yelled at the man standing by the door to the passenger side to leave and ran over the driver s side, whereupon that man jumped out of the SUV with Hernandez getting in.[13] Nogueras, meanwhile, grabbed the keys from the ignition and ran from the vehicle into the store.[14]

For his part, Hernandez saw the man who had fled from the driver s seat approaching him again, so he got out the car to confront him.[15] Hernandez said that this man lifted his shirt in a gesture Hernandez interpreted as a signal that he had a gun.[16] Hernandez later testified that he did not actually see a gun, but that the men then went away.[17]

---

[9] *Id.*
[10] *Id*.
[11] *Id.*
[12] *Id*.
[13] *Id*. at 3 (quoting record).
[14] *Id.*
[15] *Id.*
[16] *Id*.
[17] *Id.*

When police arrived, Nogueras gave a description of the man who entered on the driver s side.[18] Police obtained surveillance video of the attempted carjacking from the store and, after posting scenes from the video on social media, received an anonymous tip that identified Floyd as one of the carjackers.[19] Using that information, police produced a photo array that included Floyd s picture.[20] Both Nogueras and Hernandez then picked Floyd out of the photo array as the man who entered the SUV on the driver s side, and later both identified Floyd in court.[21]

### Second Incident

On September 28, 2015 - three weeks after the first incident - Mary Cornley was leaving Heck s Café in Ohio City at 9 pm to go to her car parked on the corner next to the restaurant.[22] Cornley testified that in leaving Heck s she passed a young, black woman on the street who said something to a man, later identified as Floyd, who was standing on the corner near Cornley s vehicle.[23]

---

[18] *Id*.

[19] *Id.*

[20] *Id*.

[21] *Id*.

[22] *Id*.

[23] *Id*.

As Cornley approached her vehicle, the man she had seen near her vehicle jumped in front of her, pulled a gun out of his waistband, pointed it at her, and demanded her keys.[24] Cornely complied, but as she was handing him her keys, she pulled back on the keys so that the key fob came loose in her hands.[25] Cornely ran screaming back to the restaurant as her assailant tried to get into the car.[26] Cornely said she got a good look at the attacker through the restaurant window as she kept locking the doors with the key fob as he tried to get into the car.[27] Eventually, the man got the door open, got inside and drove away.[28]

As the vehicle was speeding off, a cook at Heck s Café said that he saw the young black woman Cornley had passed on the street run down the street and jump into Cornely s vehicle, which stopped to pick her up.[29] The cook later identified the young woman, who police later learned was Floyd s sister, from a photo array.[30] Cornley described the carjacker at the scene but could not pick out Floyd in a photo array.[31] Nevertheless, with 100 percent certainty, Cornley identify Floyd at trial as being her attacker.[32]

---

[24] *Id.* at 4 (quoting record).

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

### Third Incident

The very next day after the carjacking involving Cornely, Hannah Moses, a college student, was walking to a Cleveland market near Case Western Reserve University at 4 pm when she passed a young woman sitting on a bench and a man standing nearby.[33] They both looked at Moses as she walked by, and a few moments later, after she had turned a corner, the man ran up to her, pointed a gun at her, backed her against a wall, demanding her wallet, which Moses surrendered.[34] Moses told the man the wallet contained only some receipts and canceled checks and the man told her to run away.[35]

Moses ran to where she could call 911.[36] Moses gave the responding officers a description of the robber and police obtained surveillance video from cameras in the area, later preparing a photo array.[37] Moses, however, was unable to identify anyone from the array.[38]

### Fourth Incident

Just a few hours after Moses was robbed, Captain Deberra Schroeder, acting battalion chief for the Cleveland fire department, and a former police officer, was sitting

---

[33] *Id*.

[34] *Id*.

[35] *Id*.

[36] *Id*. at 5 (quoting record).

[37] *Id.*

[38] *Id*.

in her SUV in the parking lot of another Giant Eagle on Cleveland s west side.[39] The doors were unlocked and the engine was running.[40]

Suddenly, a male opened the diver s side door, pointed a gun at Schroeder s face, and said,  Get out of the car. I have a gun."[41] While this was happening, another male was attempting to get into the passenger side but could not.[42] Schroeder testified that she lunged at the man on the driver s side, reached down at her right side, and yelled,  I have a gun, too."[43] With that, both men ran away.[44] Schroeder gave chase in her vehicle but was unable to catch them.[45]

When Schroeder was later shown a six-person photo array that included Floyd, she eliminated five of the photos, but could not definitively identify Floyd because, in the photograph, he was looking down and Schroeder said she needed to see his eyes for a positive identification.[46] But at trial Schroeder positively identified Floyd as the man who pointed a gun at her and stated she was 100 percent certain of her identification.[47]

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*

**Floyd is apprehended.**

The day after the incidents with Moses and Schroeder, a Cleveland police officer observed a vehicle making a left turn without signaling.[48] A check of the license plate revealed that the vehicle was the one stolen from Mary Cornley two days earlier.[49] The officer followed the vehicle until it turned into a parking lot, at which point the officer activated his overhead lights.[50] The vehicle stopped, and the male driver and three females ran from the vehicle.[51]

After a short chase, the officer apprehended Floyd, who was found with a dark jacket similar that described by Deberra Schroeder and the keys to a Hyundai Tucson, the vehicle stolen from Mary Cornley.[52] The officer also apprehended Tanishia Bradley, Floyd s sister, who had also run from the vehicle when it stopped in the parking lot.[53] In a subsequent search of the vehicle, police found canceled checks and receipts from Hannah Moses wallet in the glove box.[54]

---

[48] *Id*. at 6 (quoting record).
[49] *Id*.
[50] *Id*.
[51] *Id*.
[52] *Id*.
[53] *Id*.
[54] *Id*.

*Indictment, Trial, and Sentence*

Floyd was charged with 18 counts arising from these four incidents, including aggravated robbery, kidnapping, attempted grand theft, receiving stolen property, and having a weapon while under disability.[55] With the exception of the having weapons while under disability and receiving stolen property counts, all the remaining charges had firearms specifications.[56] Floyd, through counsel, pled not guilty,[57] and waived his right to a jury trial.[58]

After a bench trial, Floyd was found guilty on all counts.[59] On April 12, 2016, Floyd was ordered to serve an aggregate sentence of sixteen years.[60] The sentencing order was later corrected to show that Counts Two and Three of the indictment had merged with Count One.[61]

---

[55] *Id*. at 6-7 (citing record).

[56] *Id*. at 7 (citing record).

[57] *Id*.

[58] *Id*.

[59] *Id.*

[60] *Id*.

[61] *Id*.

### *State Appeals After Conviction*

**A.**    *Ohio Court of Appeals*

On April 22, 2016, Floyd, acting through different counsel,[62] timely[63] appealed his

conviction and sentence.[64] In his brief, Floyd raised the following five assignments of error:

1.    The trial court erred when it did not adequately advise defendant-appellant with respect to the jury waiver.[65]

2.    The trial court erred in convicting defendant-appellant of Counts 9 through 15 and all specifications to those counts when they were not supported by sufficient evidence. Therefore, defendant-appellant s convictions must be reversed.[66]

3.    The trial court erred in convicting defendant-appellant when the convictions and specifications were against the manifest weight of the evidence.[67]

4.    The trial court erred in permitting the admission of the unfairly prejudicial evidence regarding defendant-appellant s juvenile adjudication.[68]

5.    The trial court erred in convicting defendant-appellant when he was deprived of the effective assistance of counsel.[69]

---

[62] P. Andrew Baker represented him in his appeal, ECF No. 11, Attach. 2 at 28; Patricia London represented him at trial. *Id*. at 23.

[63] A criminal defendant in Ohio has 30 days from the date his judgment of conviction and sentence is journalized to file a notice of appeal with the Ohio appellate court. Ohio R. App. P. 4(A).

[64] ECF No. 11, Attachment 2 at 28.

[65] *Id*. at 38.

[66] *Id*.

[67] *Id*.

[68] *Id*.

[69] *Id*.

The State filed a brief in response,[70] and on February 2, 2017, the Ohio appeals court affirmed the judgment of the trial court, overruling all of Floyd s assignments of error.[71]

## B.    Supreme Court of Ohio

On March 13, 2017, Floyd, *pro se*, timely[72] filed a notice of appeal with the Supreme Court of Ohio.[73] He stated the following five propositions of law:

1.    The trial court erred when it did not adequately advise defendant-appellant with respect to the jury waiver.[74]

2.    The trial court erred in convicting defendant-appellant of counts 9 through 15 and specifications to those counts when they were not supported by substantial evidence.[75]

3.    The trial court erred in convicting defendant-appellant when the convictions and specifications were against the manifest weight of the evidence.[76]

4.    The trial court erred when it permitting (*sic*) the State to inquire as to details regarding appellant s juvenile adjudication.[77]

5.    The trial court erred in convicting defendant-appellant when he was deprived of the effective assistance of counsel.[78]

---

[70] *Id*. at 53.

[71] *Id*. at 74.

[72] Ohio S.Ct. Prac. R. 7.01(A)(1)(a)(i). To be timely, a notice of appeal to the Supreme Court of Ohio must be filed within 45 days of the appellate judgment for which review is sought.

[73] ECF No. 11, Attachment 2 at 100.

[74] *Id*. at 103.

[75] *Id*.

[76] *Id.*

[77] *Id*.

[78] *Id*.

The record does not show that the State elected to file a responsive brief and on July 5, 2017, the Supreme Court of Ohio declined jurisdiction.[79]

The record also does not show that Floyd sought a writ of certiorari from the Supreme Court of the United States.

## Federal Habeas Petition

On May 31, 2018, Floyd, *pro se*, timely[80] filed[81] the present petition for federal habeas relief by placing his petition in the prison mail system.[82] In his petition, he asserts the following five grounds for habeas relief:

> 1.     The trial court erred when it did not adequately advise defendant-appellee with respect to the jury waiver.[83]
>
> 2.     The trial court erred in convicting the defendant-appellee of counts 9 through 15 and all specifications to those counts when they were no supported by sufficient evidence.[84]
>
> 3.     The trial court erred in convicting defendant-appellant when the convictions and specifications were against the manifest weight of the evidence.[85]
>
> 4.     The trial court erred when it permitting (*sic*) the admission of the unfairly prejudicial evidence regarding appellant s juvenile adjudication.[86]
>
> 5.     The trial court erred in convicting defendant-appellant when he was deprived of the effective assistance of counsel.[87]

---

[79] *Id*. at 141.

[80] The petition was filed within one year of the conclusion of the direct appeal.

[81] ECF No. 1.

[82] *Id*. at 16.

[83] *Id*. at 6.

[84] *Id*. at 8.

[85] *Id.* at 9.

[86] *Id*. at 11.

[87] *Id*. at 16.

The State, in its return of the writ, contends that:

1.      Ground One (jury waiver) is non-cognizable;[88]

2.      Ground Two (insufficient evidence counts 9-15) is meritless under AEDPA;[89]

3.      Ground Three (manifest weight) is non-cognizable;[90]

4.      Ground Four (juvenile adjudications) is procedurally defaulted;[91]

5.      Ground Five (ineffective assistance) is non-cognizable because the sole basis is a claim under state law regarding proper joinder.[92]

Floyd did not file a traverse.

## Analysis

### A.      Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Floyd is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition.[93] Thus, he meets the in-custody requirement of the federal statute conferring jurisdiction over this petition.[94]

---

[88] ECF No. 11 at 13-14.

[89] *Id*. at 14.

[90] *Id*.

[91] *Id*.

[92] *Id*. at 15.

[93] Floyd was incarcerated at the Southern Ohio Correctional Facility when the petition was filed (ECF No. 1 at 1) and was subsequently transferred, as noted above, to the Ohio State Penitentiary.

[94] 28 U.S.C. § 2254(a).

2.     There is also no dispute, as detailed above, that the petition was timely filed under the applicable statute.[95]

3.     In addition, Floyd states[96] and my review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[97]

4.     Finally, Floyd, who is proceeding *pro se*, has not requested the appointment of counsel,[98] nor has he sought an evidentiary hearing.[99]

**B.     Standards of Review**

*(1)     Non-cognizable Claims*

It is well-recognized that a claim for relief based merely on a purported error of state law is not cognizable in a federal habeas proceeding.[100] Error in the application of state law gives rise to a federal habeas claim only insofar as such an error renders the underlying proceeding so fundamentally unfair as to deny the petitioner due process.[101] Lack of fundamental fairness is understood  very narrowly,"[102] as only those actions that violate

---

[95] 28 U.S.C. § 2254(d)(1).
[96] ECF No. 1 at 13.
[97] 28 U.S.C. § 2254(b).
[98] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.
[99] 28 U.S.C. § 2254(e)(2).
[100] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).
[101] *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991).
[102] *Dowling v. United States*, 493 U.S. 342, 352 (1990).

those  fundamental conceptions of justice which lie at the base of our civil and political institutions."[103]

The petitioner bears the burden of showing a lack of fundamental fairness.[104] In analyzing the claim, the federal habeas court is bound by the rulings of the state s highest court as to state law[105] and may not second-guess a state court s interpretation of its own procedural rules.[106]

### *(2)    Procedural Default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA review in a federal habeas court.[107] Such a claim is subject to dismissal by the federal court as procedurally defaulted if the petitioner failed to raise it to a state court when state remedies were still available or the petitioner violated a state procedural rule when attempting to raise it.[108] The petitioner must initially afford the state courts an  opportunity to pass upon and correct alleged violations of its prisoners  federal rights." This requires that a petitioner must go through one complete round of the state s established appellate

---

[103] *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).
[104] *Bey v. Begley*, 500 F.3d 514, 521 (6th Cir. 2007).
[105] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).
[106] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).
[107] *Harrington v. Richter*, 562 U.S. 86, 98 (2011).
[108] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

review procedure,[109] presenting his claims to  each appropriate state court."[110] Moreover,

a petitioner must fairly present those state courts with the same claim on the same theory

as what is presented to the federal court.[111]

When the state asserts that a violation of a state procedural rule by the petitioner is

the reason a state court did not reach the substance of the petitioner s claim, and so is the

basis for a procedural default, the Sixth Circuit has established a four-part test to determine

if such a procedural default will bar federal habeas review of the claim.[112]

Essentially:

1.      There must be a state procedural rule in place that was not followed;

2.      The state court must have denied consideration of the claim on the grounds

of the petitioner s failure to follow the procedural rule;

3.      That state rule must be an  adequate and independent" state law ground that

is both  firmly established and regularly followed;"

---

[109] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).
[110] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).
[111] *Picard v. Connor*, 404 U.S. 270, 278 (1971).
[112] *Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (re-stating test post enactment of the AEDPA).

4.     To avoid the default, the petitioner must demonstrate either cause for the default and a resulting actual prejudice to him of the federal court not addressing the claim, or that failure to consider the claim would result in a fundamental miscarriage of justice.[113]

To establish  cause," the petitioner must show that some objective factor external to the defense impeded counsel s efforts to comply with the state procedural rule.[114] To show  prejudice" from upholding the default, a petitioner must show that the errors complained of worked to his actual and substantial disadvantage.[115]

## (3)     AEDPA

Under the AEDPA, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by a state court unless that adjudication either:

1.     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[116]

---

[113] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citations omitted).
[114] *Id*.
[115] Id.
[116] 28 U.S.C. § 2254(d).

A decision is contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a matter of law or if the state court decides a case differently than the United States Supreme Court on a set of materially indistinguishable facts.[117] A state court s adjudication is an unreasonable application of" clearly established federal law when the state court correctly identifies the governing principle from the decision of the United States Supreme Court but then unreasonably applies that principle to the facts of the petitioner s case.[118]

As the Supreme Court has stated, this standard of unreasonable application" is an intentionally difficult one for petitioners to meet.[119] Likewise, the Supreme Court has held that AEDPA limits a federal habeas court to the record that was before the state court,[120] and has cautioned that simply finding that a state court decision was incorrect does not necessarily mean that it was unreasonable.[121] Further, to warrant AEDPA deference, the state court decision on the merits need not give any explanation for the result,[122] nor

---

[117] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).
[118] *Id*. at 413.
[119] *Harrington,* 526 U.S. at 102.
[120] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).
[121] *Schriro v. Landrigan*,
[122] *Harrington*, 562 U.S. at 98.

directly cite any Supreme Court case, so long as neither the reasoning nor the result of the state court contradicts those Supreme Court cases.[123]

## C.    Application of Standards

### *(1)*    *Ground One*

In Ground One Floyd asserts that the trial court erred when it did not  adequately advise" him with regard to the jury waiver. As noted, he raised this claim to both the Ohio appellate court and the Supreme Court of Ohio on direct appeal.

The Ohio appeals court began its analysis of this claim by noting that Floyd s counsel, when stating that Floyd wished to waive a jury trial, informed the court that she had discussed the  pros and cons about a bench and jury trial" with Floyd and that   has a full understanding and is making an informed decision about this."[124] Floyd then signed the waiver in open court.[125] The trial judge then had the following colloquy with Floyd:

THE COURT:        Mr. Floyd, have you done this knowingly, voluntarily signed the jury waiver?

THE DEFENDANT:        Yes, sir.

---

[123] *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).
[124] ECF No. 11, attachment 2 at 174.
[125] *Id.*

19

THE COURT:　　　　　　　It s your wish to proceed to trial to the judge?

THE DEFENDANT:　　　　Yes.

THE COURT:　　　　　　　Okay. All right. We ll get this filed and then we can start

the trial.[126]

The reviewing court then observed that under Ohio law the only requirements for a
valid jury waiver are that the waiver must be: (1) in writing; (2) signed by the defendant;
(3) filed; (4) made a part of the record; and (5) made in open court.[127] There are no
requirements in Ohio law that the trial court question the defendant to ascertain that he is
fully informed as to his right to a jury trial, nor to inform the defendant of the implications
of a waiver.[128] That said, there must be evidence in the record that the defendant
acknowledged the waiver to the court while in the presence of counsel.[129]

The Ohio appellate court found that all requirements of Ohio law regarding a valid
jury waiver were followed in this case.[130]

---

[126] *Id.*
[127] *Id.* at 175 (citation omitted).
[128] *Id.*
[129] *Id.* (citation omitted).
[130] *Id.* at 176.

As the State notes here, there is no clearly established federal law mandating that a trial court provide a more extensive statement to the defendant outlining the consequences of a waiver beyond what was done here.[131]

To that point, the Sixth Circuit has stated that the only federal constitutional requirements for a valid jury waiver are substantial identical to those stated in Ohio law:

> [T]he only requirements for a criminal defendant to validly waive his right to a trial by jury are that (1) the waiver be in writing; (2) the government attorney must consent to the waiver; (3) the court must approve the waiver; and (4) the defendant s waiver be voluntary, knowing and intelligent.[132]

Moreover, the United States Supreme Court has stated:

> [T]he law ordinarily considers a waiver knowing, intelligent and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances – even though the defendant may not know the specific detailed consequences of invoking it.[133]

In addition, and as relates to Floyd s specific claim here, the Sixth Circuit has stated that although it is preferable for the trial court to conduct an on-the-record colloquy regarding the waiver, there is no constitutional right to such a colloquy.[134]

---

[131] ECF No. 11 at 22-23.
[132] *Cooey v. Coyle,* 289 F.3d 882, 913 (6th Cir. 2002).
[133] *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citation omitted).
[134] *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2002).

Thus, I recommend dismissing Ground One for the reason that it states a non-cognizable ground for relief as to mandating a colloquy with the defendant that goes into detail about the consequences of the waiver.

In the alternative, I recommend denying Ground One on the merits after AEDPA review because the decision of the Ohio appeals court that Floyd knowingly, voluntarily and intelligently waived his right to a jury trial was not contrary to clearly established federal law as set forth in *Ruiz*.

### (2) *Ground Two*

In this ground, Floyd claims that his convictions on counts 9-15 (incidents concerning Moses and Schroeder) are not supported by sufficient evidence.

The State initially points out that analysis of this claim is done under two levels deference. [135] First, under *Jackson v. Virginia*, [136] the clearly established federal law regarding sufficiency of the evidence, deference is given to the trier of fact concerning its findings. Second, under AEDPA, deference is given to the state appeals court decision that upheld the decision of the trial court.

Thus, the reviewing federal habeas court here must determine if the decision of the Ohio appeals court unreasonably applied Jackson in concluding that any rational trier of

---

[135] ECF No. 11 at 24.
[136] 443 U.S. 307 (1979).

fact could have found Floyd guilty beyond a reasonable doubt on the evidence produced at trial when viewed in the light most favorable to the prosecution.

So understood, I note first that the Ohio appeals court began its review of this claim by correctly noting that analysis for insufficient evidence must proceed under the federal constitutional standard of Jackson, as that test is incorporated into Ohio law.[137] It then further observed that a defendant may be convicted solely on the basis of circumstantial evidence and that unexplained possession by the accused of recently stolen property allows the permissible inference that the accused is guilty of the theft.[138]

In Floyd s case, he was arrested driving a car stolen just two days before with cancelled checks and receipts stolen from Hannah Moses in the glove box of that car.[139] Moreover, Moses  description of the man who robbed her matched the description she gave to police, as well as the description given by the owner of the stolen car concerning the man who stole it.[140] Just as important, Floyd could give no explanation to police or at trial as to how he came into possession of either the car or the items from Hannah Moses wallet.[141] Viewing all this evidence in the light most favorable to the prosecution under the

---

[137] ECF No. 11, Attachment 2 at 176-77.
[138] *Id*. at 178.
[139] *Id*.
[140] *Id.*
[141] *Id.*

standards set in Ohio law, the Ohio appeals court found that sufficient evidence supported Floyd s conviction on counts related to Hannah Moses.[142]

Similarly, as counts related to Deberra Schroeder, Floyd had claimed there was insufficient evidence to show that the man who jerked open the door to Schroeder s vehicle, pointed a gun at her and told her to get out of the car intended to rob her.[143] Schroeder testified that she believed the man brandishing a gun at her who told her to get out of her car was intending to steal the car.[144] While recognizing that Schroeder s assailant never specifically announced to her that he intended to steal the car, the Ohio appeals court found, after viewing the evidence in the light most favorable to the prosecution and drawing all favorable inferences from that evidence, that a reasonable factfinder could conclude that Floyd s intent was to steal Schroeder s car.[145]

In sum, after according appropriate deference to both the finding of the trier of fact and the decision of the Ohio appeals court, I recommend denying this claim upon AEDPA review because the decision of the state appeals court was not an unreasonable application of the clearly established federal law of *Jackson*.

---

[142] *Id.*
[143] *Id.* at 179.
[144] *Id.*
[145] *Id.*

*(3)*    ***Ground Three***

Floyd s claim in Ground Three is that his convictions are against the manifest weight of the evidence.

It is well-settled that a claim that a conviction is against the manifest weight of the evidence is purely a state law claim that is non-cognizable in a federal habeas proceeding.[146] Because, as noted above, Floyd has advanced a separate claim of insufficiency of the evidence, it is not necessary to construe this claim in the alternative as stating a cognizable sufficiency of the evidence claim.

*(4)*    ***Ground Four***

In Ground Four Floyd contends that the trial court erred when it permitted the admission of evidence regarding Floyd s juvenile record.

The Ohio appellate court, when addressing this claim, noted first that Floyd had stipulated to the fact of prior juvenile convictions.[147] That said, the State then introduced evidence as to the specific nature of those juvenile offenses – *i.e.*, attempted murder and the targeting of females in SUVs.[148]

The Ohio appeals court here initially found that testimony about previously targeting women in SUVs was properly admitted in the context of explaining how the

---

[146] *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).
[147] ECF No. 11, Attachment 2 at 183.
[148] *Id.*

investigating detective saw similarities among the incidents of this case and not as prior bad acts" evidence.[149] However, the appellate court found that it was error for the trial court to admit details about Floyd s juvenile record, such as his conviction in juvenile court of attempted murder, when Floyd had already stipulated to the existence of a juvenile record such as would establish his disability related to possessing a firearm.[150]

That said, the appeals court noted that Floyd did not offer a contemporaneous objection at trial to this decision of the trial court.[151] Therefore, the appellate court could only proceed with a plain error analysis.[152] Under such an analysis, a reviewing court is to examine the error in light of all the evidence produced at trial and determine if the factfinder would have convicted the defendant even if the error had not occurred.[153]

Here, the Ohio appeals court found no plain error.[154] Specifically, it found first that the evidence against Floyd was  overwhelming."[155] It further noted, as this was a bench trial, that a reviewing court must presume that the judicial factfinder considered only

---

[149] *Id*. at 184-85.
[150] *Id*. at 185-86.
[151] *Id*. at 186.
[152] *Id*. at 186.
[153] *Id*. at 187.
[154] *Id*.
[155] *Id*.

relevant and admissible evidence.[156] Accordingly, it found that any error in admitting details of Floyd s juvenile convictions did not affect the outcome of the trial.[157]

I observe, as does the State, that the appellate court s invocation of Ohio s contemporaneous objection rule sets forth an independent and adequate state law basis for a procedural default here.[158] The mere fact that the state court then proceeds to a plain error analysis does not waive the default and restore the issue.[159]

Having established that Ground Four is here procedurally defaulted, I now note that Floyd has shown neither cause nor prejudice to excuse the default, nor has he shown miscarriage of justice, as in the conviction of one who is actually innocent.

Consequently, I recommend that Ground Four be dismissed as procedurally defaulted.

---

[156] *Id*.

[157] *Id*.

[158] *Hand v. Houk*, 871 F.3d 390, 47 (6th Cir. 2017).

[159] *Id*.

### *(5)* *Ground Five*

In Ground Five, Floyd states that his trial counsel was ineffective for failing to move for severance of offenses, *i.e.*, for separate trials on each incident. This is the ground was presented to the state appeals court on direct appeal and it found, when considering the claim under Ohio s rules of joinder, that  the charges were properly joined for trial."[160]

Therefore, it further found that defense counsel s failure to move to sever  did not prejudice Floyd" and so did not constitute ineffective assistance of counsel under the well-established standard of *Strickland v. Washington*.[161]

As to the state appellate court finding that joinder was proper here as matter of Ohio law, a ruling by a state court on a matter of state law  binds a federal court sitting in habeas corpus."[162] Thus, to the extent that Ground Five rests on an assertion that joinder was improper, that claim should be dismissed as a non-cognizable question of state law.

Moreover, to the extent that Ground Five is a cognizable claim of ineffective assistance of trial counsel, I recommend that the claim be denied here because the state court

---

[160] ECF No. 11, Attachment 2 at 189.
[161] *Id*. (applying *Strickland*, 466 U.S. 668 (1984)).
[162] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

decision on that issue as not an unreasonable application of the clearly established federal law of *Strickland*.

## Conclusion

For the reasons stated, I recommend that the *pro se* petition of Allen T. Floyd for a writ of habeas corpus under 28 U.S.C. § 2254 be denied in part and dismissed in part as is more fully set forth above.

IT IS SO RECOMMENDED.

Dated: July 28, 2021                              s/William H. Baughman Jr.
                                                 United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[163]

---

[163] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).